MARY ALEXANDER ET AL., RESPONDENTS, v. ANNA MARECH, APPELLANT.

Submitted January 25, 1935—Decided April 25, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the appellant, *Edward A. Markley* and *Charles W. Broadhurst*.

For the respondent, *Elias G. Willman*.

PER CURIAM.

The case arises out of an automobile accident, the circumstances of which are not relevant to this appeal. The car that did the damage was owned by defendant's brother, one Klein, and defendant had the privilege of using it. The only errors alleged are refusal to nonsuit and refusal to direct a verdict for defendant. The question is whether there was legal evidence for the jury that at the time of the accident the car was being operated by defendant's servant on defendant's business.

Defendant, as has been said, had the privilege of using the car, which was kept at the garage operated by one Isidore Katerwitz. The defendant did not drive the car, and when she used it, she employed Katerwitz to do the driving. On the occasion now under examination she desired to go and see her mother, and called up the garage. The telephone was answered by an employe of Katerwitz named Clarkson.

Defendant asked for "Izzy" meaning Katerwitz and Clarkson said he had gone to supper. Defendant said, "I want him to take me some place," and hung up. Clarkson testified that he said he would take her, but that "she evidently had hung up" and "did not say anything." Defendant also testified that she hung up, on saying that she "wanted him to take her some place." Plaintiff undertook to impeach Clarkson's testimony by proof of an inconsistent statement in another action, but of course such statement could not be used as evidence on the main issue.

However, Clarkson undertook to drive the car to defendant's house, which was some blocks away, to the southwest of the garage. His shortest route was south along Quitman street, then west five blocks on a convenient intervening cross street, then south on Stratford Place to defendant's home. But he needed some cigarettes, and to get them at a store on West Kinney street, started north, instead of south, on Quitman street, and the accident occurred at the very first corner, while he was northbound.

Without taking time to discuss the border line cases on deviation in detail, we are of opinion that assuming the defendant heard and assented to Clarkson's offer to bring the car, he was not operating it for her at the time of the accident. Not only had he ignored the natural route, but was actually going away from defendant's house at the time. In *Shefts* v. *Free*, 105 *N. J. L.* 577; 146 *Atl. Rep.* 185, the normal journey had ended. Here, we consider it had not begun.

But if we err in this regard, there was still no case for the jury, as the evidence altogether failed to show that defendant was in any way apprised that Clarkson was coming, let alone that she asked him to do so or even assented to his doing so. Quite conceivably she might have answered, if she had heard what he said over the telephone, that she did not know Clarkson and wanted "Izzy" or no one. The testimony failed to indicate Clarkson as anything more than a mere volunteer. There was consequently no case for the jury, and the refusal to control them was error, for which the judgment must be reversed to the end that a *venire de novo* issue.